Claude J. Morris v. Commissioner.
Morris v. Commissioner
Docket No. 83018.
United States Tax Court
T.C. Memo 1961-68; 1961 Tax Ct. Memo LEXIS 280; 20 T.C.M. (CCH) 341; T.C.M. (RIA) 61068; March 14, 1961
Claude J. Morris, pro se, 28 D St., Avenel, N.J. Chapman H. Belew, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent has determined deficiencies in petitioner's income tax for the calendar years 1954, 1955, and 1956 in the respective amounts of $680.89, $834.15, and $666.26. The issue is whether petitioner incurred a net operating loss in 1953 which may be carried forward and deducted in the tax years in question. Findings of Fact The stipulated facts are incorporated by this reference. Petitioner is an individual who presently resides at 28 D Street, Avenel, New Jersey. His individual income tax returns for the years 1954, 1955, and 1956 were filed with the district director of internal revenue at Jacksonville, Florida. In the spring of 1952 petitioner, an electrician by trade, moved his family consisting of his wife, Miriam, and three children, Sharon, Kent, and Patricia, from New England to Fort Lauderdale, Florida. The reason for the move was that Kent had rheumatic fever and petitioner hoped to obtain relief for the boy in Florid'ts warm climate. On May 13, 1952, petitioner and *282 his wife purchased a motel property in Fort Lauderdale for a price of $95,011. [1] Petitioner financed the purchase by paying $24,391.55 in cash (consisting of his life savings and monies borrowed from friends), giving a $70,000 first mortgage, and assuming certain liabilities for the balance. From the outset the business operated at a loss. The tourist season had ended in Florida by the time petitioner took possession of the motel in May of 1952. Faced with dwindling cash, petitioner found it necessary to leave Florida by himself on June 24, 1952, and obtain employment during the off season period in his regular occupation as an electrician. He found work in the Trenton, New Jersey, area and such monies as he earned between June and December of 1952, to the extent they exceeded his personal living expenses, he forwarded to his family in Florida to defray their living costs and help meet the current expenses of the motel. After the Christmas holidays in 1952, petitioner returned to Fort *283 Lauderdale. A similar pattern occurred in 1953 - petitioner working as an electrician after the season and borrowing from his friends, with the motel operating at a loss. Confronted with these losses and unable to raise sufficient capital to operate the business and make the mortgage payments, petitioner and his wife sold the motel property on December 11, 1953, for a sale price of $78,000 before expenses. At the time of the sale, allocations were not made by the parties to specific assets, land, buildings and furnishings, in arriving at the $78,000 figure. Petitioner's 1953 income tax return shows the following items of income and loss: (a)
Wages as an electrician
$ 6,827.57
(b)
Loss on sale of motel on
December 11, 1953
17,996.35
(c)
Loss from operation of mo-
tel from January 1, 1953, to
December 11, 1953
6,224.32 Petitioner added his losses, subtracted his wages therefrom, and showed a net loss for the year of $17,383.10. On his 1954, 1955, and 1956 income tax returns, petitioner claimed deductions for net operating loss carryovers from 1953 in the respective amounts of $6,307.54, $7,081.58, and $3,977.98, leaving petitioner with no tax *284 liability in each of these years. Respondent in his deficiency notice has disallowed these net operating loss deductions. Opinion RAUM, Judge: Although the deduction for net operating losses during the years before us, 1954-1956, is based upon Section 172(a) of the 1954 Code, Section 172(e) explicitly provides that: (e) Law Applicable To Computations. - In determining the amount of any net operating loss carryback or carryover to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year. The preceding sentence shall apply with respect to all taxable years, whether they begin before, on, or after January 1, 1954. Accordingly, it is clear that since the loss which petitioner seeks to carry over was incurred in 1953, its availability in computing a "net operating loss" carryover from the 1953 must be determined under the 1939 Code, which was applicable to that year. Cf. . The controlling language in Section 122(d)(5) of the 1939 Code limits the amount of the net operating loss in respect of deductions which are otherwise allowable but which are *285 not "attributable to the operation of a trade or business regularly carried on by the taxpayer". [2]
The question for decision, therefore, is whether the loss on the sale of the motel may be treated as attributable to the operation of petitioner's trade or business of running a motel. Unfortunately, this question has been decided adversely to petitioner in a number of cases. [3], affirmed (C.A. 8), certiorari denied, ; (C.A. 7), affirming (N.D. Ill.); (C.A. 6), affirming per curiam (W.D. Tenn.); *286 (C.A. 5), affirming per curiam a Memorandum Opinion of this Court; (C.A. 8), affirming (D.N.D.); ; (Ct. Cls.); , affirmed (C.A. 2); , affirmed per curiam, (C.A. 2). Petitioner, a layman, appeared on his own behalf and expressed bewilderment at the Commissioner's failure to allow the deductions in controversy. We are entirely sympathetic with him. That the law under the 1939 Code, as judicially interpreted in this *287 respect, was harsh was recognized by Congress in 1954, when Section 172(d)(4)(A) of the 1954 Code changed the law. [4] The Committee reports accompanying the new legislation explicitly state that the change has the effect of overruling the Joseph Sic case and similar cases. [5] However, as noted above, the 1939 Code is still applicable to the year 1953, when the loss herein occurred. The application of the old rule, resulting in claims for deficiencies aggregating more than $2,000 plus interest against the petitioner, a workman who on this record apparently has no assets, would seem particularly oppressive. [6] However, as the case is presented to us we have no alternative but to hold that under Sic and related cases, the deduction is not allowable. *288 Decision will be entered for the respondent. Footnotes
1. It was stipulated the price was $95,011, but a copy of the closing statement introduced in evidence shows the purchase price was $95,000 and $11 was added as a prorated insurance premium.↩
2. SEC. 122. NET OPERATING LOSS DEDUCTION. * * *
(d) Exceptions, Additions, and Limitations * * *
(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. * * *↩
3. Nor is petitioner entitled to a carryover based upon the $6,224.32 loss sustained upon the actual operation of the motel in 1953, since it was absorbed by petitioner's income of $6,827.57 which he earned as an electrician in 1953. Cf. (C.A. 3), affirming percuriam a Memorandum Opinion of this Court; (C.A. 2); .↩
4. SEC. 172. NET OPERATING LOSS DEDUCTION. * * *
(d) Modifications. - The modifications referred to in this section are as follows: * * *
(4) Nonbusiness Deductions of Taxpayers Other Than Corporations. - In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. For purposes of the preceding sentence - (A) any gain or loss from the sale or other disposition of - (i) property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or (ii) real property used in the trade or business, shall be treated as attributable to the trade or business; ↩
5. See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. A56-A57; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 212-213. ↩
6. Although not strictly relevant, it may be observed that there is an added note of irony here by reason of the fact that petitioner sold the motel on December 11, 1953. Had he sold it 21 days later, the loss would definitely have been governed by the 1954 Act, and the deduction sought by petitioner would therefore plainly have been allowable in any event.↩